# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

JO'EL PLUMMER,

    Plaintiff,

v.

DON WRIGHT,[1]
*Acting Secretary, United States Department of Health and Human Services,*

    Defendant.

Civil Action No. TDC-16-2957

## MEMORANDUM OPINION

Plaintiff Jo'el Plummer, currently employed as a Program Specialist with the United States Food and Drug Administration ("FDA"), has brought this action against Defendant Don Wright, the Acting Secretary of Health and Human Services ("HHS"), alleging that she has been subjected to discrimination on the basis of disability, age, and race through the denial of reasonable accommodations and promotion opportunities, as well as retaliation for filing a complaint in 2009 against HHS with the United States Equal Employment Opportunity Commission ("EEOC"), all in violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-796 (2012); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (2012), and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. Presently pending before the Court is HHS's Motion to Dismiss or, Alternatively, for Summary Judgment and Plummer's "Motion, Pursuant to Fed. R. Civ. P. 12(d) and 56(d), for Court to Deny or Defer

---

[1] The original Defendant, Sylvia Mathews Burwell, is no longer the Secretary of Health and Human Services. The Clerk is directed to substitute the present Acting Secretary as the Defendant in this case. *See* Fed. R. Civ. P. 25(d).

Entry of Summary Judgment or Dismissal to Permit Plaintiff to Conduct Discovery" ("Rule 56(d) Motion"). Having reviewed the Complaint, briefs, and other submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Rule 56(d) Motion is GRANTED, and HHS's Motion, construed as a Motion to Dismiss, is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The following facts are presented in the light most favorable to Plummer, the nonmoving party:

### I. Requests for Reasonable Accommodations

Jo'el Plummer is a 52-year-old African American woman currently employed as a GS-11 Program Specialist in the FDA Office of Surveillance and Epidemiology ("OSE"). Since 2001, Plummer has suffered from chronic rhinitis, a medical condition that causes severe inflammation of the mucous membranes in her nose when exposed to fumes, smoke, chemicals, or similar airborne irritants. When symptomatic, Plummer experiences difficulty breathing, talking, and thinking, which limits her ability effectively to perform her job. In 2006, Plummer's negative reaction to the cleaning agents at the FDA's Rockville, Maryland office prompted Plummer to transfer to the FDA office in Silver Spring, Maryland.

This transfer did not alleviate Plummer's condition, and in 2009 she filed an equal employment opportunity ("EEO") complaint with the FDA seeking reasonable accommodations for her rhinitis. As a result, the FDA provided Plummer with her own office and a High Efficiency Particulate Arrestance ("HEPA") filter. Plummer's symptoms persisted. Over time, Plummer took various other measures to avoid airborne irritants, such as closing the door to her office and designating it as a fragrance-free zone. FDA management, however, permitted

Plummer's door to remain open at times and did not prevent co-workers wearing fragrances from entering her office. Plummer also began to wear a surgical mask to meetings but stopped doing so after she was ridiculed by managers and co-workers. In 2010, shortly after being promoted to GS-11, Plummer's supervisor told her that "she never would receive another promotion." Am. Compl. ¶ 35, ECF No. 12.

On June 27, 2013, Plummer provided her supervisor with a doctor's note recommending that she be allowed to telework. Although initially reluctant, her supervisor allowed her one day of telework per week and told her that she would need to submit another formal request for any additional accommodations. Plummer filed that request and also submitted, on July 31, 2013 and September 19, 2013, two more doctor's notes advising that her health remained at risk from the presence of chemicals and irritants at the office. Among the accommodations she sought but did not receive were additional days of telework, a transfer to another building at the FDA Silver Spring campus or to a different FDA complex, moving Plummer's work station to a different location on the same floor where there is better air flow, and barring fragrances from the OSE office. By October 2013, Plummer developed a rash on her arms, legs, and torso and was advised by her doctor not to return to work. Although the FDA issued Plummer a temporary reasonable accommodation letter in November 2013, according to Plummer, FDA has not approved her requests or taken any remedial action other than testing the air quality in her office. During 2013, Plummer used 543 hours of sick and annual leave because of her condition.

## II. Procedural History

On December 2, 2013, Plummer filed an informal discrimination complaint with the FDA Office of Civil Rights, Employment Complaints Division. In that complaint, Plummer alleged

that she had been subjected to discrimination based on her age and disability, as well as retaliation for earlier protected activity.

On April 18, 2014, Plummer filed an "Individual Formal Complaint of Employment Discrimination" ("EEO Complaint") with the FDA Office of Equal Employment Opportunity ("OEEO") alleging age, race, and disability discrimination based on a failure to provide reasonable accommodations and on harassment in the workplace. EEO Complaint at 1, Mot. Dismiss Ex. 27, ECF No. 15-29.[2] In the EEO Complaint, Plummer included three notes from her doctor describing her "chemical sensitivities" and recommending a change in office space, a reduction in her amount of work, and two to three days of telework per week. *Id.* at 4. In an attachment to her EEO Complaint consisting of a letter drafted by Plummer's attorney, Plummer summarized her medical diagnosis and symptoms and alleged that the FDA "insisted that [she] remain in an environment that is toxic for her disability." *Id.* at 17. Plummer further charged that the limited accommodations approved by the FDA had "no practical effect," and that her supervisors "seemed unconcerned about remedying [Plummer's] complaints about air quality and the toxicity to which [she] is exposed." *Id.* She also asserted that she "has been treated disparately because of her disability, race, and age compared to others similarly situated to her and not in her protected classifications." *Id.* In the letter, Plummer sought: (1) an isolated workplace at another location other than the FDA's Silver Spring office; (2) telework every Wednesday and Friday; (3) permission to call in to conferences and meetings; (4) discretion to use rest periods and leave when medically necessary; (5) the reinstatement of 60 hours of personal leave and 40 hours of sick leave; (6) a review of her negative leave balances; and (7) $35,000 in monetary damages.

---

[2] The page numbers cited for this exhibit are those assigned by the CM/ECF system.

On May 7, 2014, OEEO responded with a letter accepting and acknowledging receipt of the EEO Complaint ("the Acceptance Letter"). In the Acceptance Letter, OEEO identified the claims in Plummer's complaint as: (1) "Whether you were subjected to disparate treatment when on November 19, 2013, you were only issued a temporary approval of your request for a Reasonable Accommodation"; and (2) "Whether you were discriminated against when from February 2013, you were required to return to work in an office environment where the air quality and toxicity is intolerable." Acceptance Letter at 1, Mot. Dismiss Ex. 28, ECF No. 15-30. The letter required that Plummer notify OEEO within seven days if its characterization of her claims was incorrect.

After OEEO completed its investigation, Plummer opted to proceed to the EEOC for review of her complaint by an administrative judge ("AJ"). *See* 29 C.F.R. § 1614.108(f) (2017). Before the case proceeded to a hearing, however, Plummer withdrew her request for AJ review. *See* U.S. Equal Emp. Opportunity Comm'n, EEO-MD-110, Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614, As Revised, Ch 7, § I (2015). The case was then returned to HHS, and the agency issued a final order dismissing her complaint. *See* 29 C.F.R. § 1614.110(a).

On September 1, 2016, Plummer filed her Complaint in this Court. In her Amended Complaint, filed on January 17, 2017, Plummer alleges four counts: (I) disability discrimination in violation of the Rehabilitation Act, including a failure to accommodate Plummer's disability and the denial of promotion opportunities; (II) retaliation in violation of the Rehabilitation Act, consisting of the failure to accommodate and the denial of promotion opportunities following the filing of her 2009 EEO complaint; (III) race discrimination in violation of Title VII, based on the denial of reasonable accommodations and promotion opportunities; and (IV) age discrimination

in violation of the ADEA, based on the denial of reasonable accommodations and promotion opportunities.

## DISCUSSION

In its Motion to Dismiss or, in the Alternative, for Summary Judgment, HHS asserted four grounds for dismissal: (1) all of Plummer's claims are barred because she failed to file her civil action within 90 days of the final agency decision on her EEO Complaint; (2) Plummer failed to exhaust administrative remedies for her claims relating to non-promotion and retaliation; (3) Plummer has not shown a failure to grant reasonable accommodations in violation of the Rehabilitation Act; and (4) Plummer has failed to state a plausible claim for, or to establish a genuine issue of material fact on, her remaining claims of age, race, and disability discrimination and of retaliation. Having reviewed Plummer's assertion that the 90-day deadline for filing should be equitably tolled because the agency's final order did not provide adequate notice of her right to file a lawsuit in federal court, HHS has now withdrawn its first claim.

In addition to responding to the merits of HHS's arguments, Plummer has filed her Rule 56(d) Motion, in which she argues that it is premature for the Court to consider a motion for summary judgment because she has not had an opportunity to conduct discovery.

### I. Rule 56(d) Motion

With its Motion, HHS has attached 34 exhibits, including four affidavits and internal FDA correspondence relating to some of the events at issue. Generally, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). If a court considers matters outside the pleadings, it must treat the motion as a motion for summary judgment. Fed. R. Civ. P. 12(d).

A court may convert a motion to dismiss into one for summary judgment, and thus consider exhibits and evidence outside the pleadings, only if the nonmoving party has had "a reasonable opportunity to present all the material that is pertinent to the motion." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted). "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some indication that the court is treating a Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Id.* The notice requirement is not onerous, requiring only that the nonmoving party be aware that material outside the pleadings is pending before the Court. *Id.* Here, the notice requirement is met. HHS titled its Motion as seeking, in the alternative, summary judgment, and Plummer has demonstrated that she has received notice by titling her responding memorandum as one opposing the "Motion to Dismiss or, Alternatively, for Summary Judgment."

The reasonable opportunity requirement is more demanding. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002); *Hamilton v. Mayor & City Council of Balt.*, 807 F. Supp. 2d 331, 341 (D. Md. 2011). HHS asserts that, during the administrative proceedings on her EEO Complaint, HHS produced to Plummer approximately 1,800 pages of relevant documents, including her personnel file and records relating to reasonable accommodation requests, the environmental conditions in her building, and training her supervisors received on EEO matters. Although these records address many of the proposed document requests referenced in Plummer's Rule 56(d) Motion, they do not address all of them.

7

For example, the previously produced records do not include comparator evidence relating to other employees who were granted similar accommodations to those sought by Plummer, evidence that Plummer alleges is necessary to contest the Motion's assertion that she cannot establish that she was subject to disparate treatment in the terms and conditions of employment on account of her race, age, or disability. Moreover, it appears that during the aborted administrative proceedings, no depositions were taken of key witnesses, whose accounts are currently limited to the contents of affidavits submitted to the EEO investigator.

Where Plummer has a right to bring a civil action in federal court, rather than a right to appeal an administrative action to federal court, she should not be denied the opportunity to use the discovery provisions of the Federal Rules of Civil Procedure to supplement the record before adjudication of the merits of her case. Accordingly, the Court will not treat the Motion as one for summary judgment. Except in addressing claims that dismissal is warranted for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), the Court excludes all attached exhibits from consideration and construes HHS's filing as a motion to dismiss for failure to state a claim under Rule 12(b)(6).

## II. Motion to Dismiss

### A. Legal Standards

To the extent that HHS seeks dismissal of Plummer's non-promotion and retaliation claims based on a failure to exhaust administrative remedies, the Motion should be construed as a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Jones v. Calvert Group, Ltd*, 551 F.3d 297, 300-01 (4th Cir. 2009).[3]

---

[3] Whether failure to exhaust administrative remedies is always a subject matter jurisdiction question has not been definitively established. The United States Supreme Court has noted that "[o]n the subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy, this Court and

On a Rule 12(b)(1) motion, the plaintiff bears the burden of proving that subject matter jurisdiction exists. See *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). Because this is a factual dispute over whether such exhaustion has occurred, the Court may consider external materials in resolving this issue. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

HHS's remaining arguments are construed as seeking dismissal for failure to state a claim under Rule 12(b)(6). In deciding such a motion, the Court must determine whether the complaint alleges facts sufficient to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a plaintiff in a discrimination case need not always plead a *prima facie* case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to state a plausible claim, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002), the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In making such a determination, the Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

---

others have been less than meticulous," *Arbaugh v. Y & H Corporation*, 546 U.S. 500, 511 (2006), and has "cautioned ... against profligate use of the term ... 'jurisdictional.'" *Union Pacific Railroad Co. v. Brotherhood of Locomotive Engineers*, 558 U.S. 67, 82 (2009). Notably, the United States Court of Appeals for the Fourth Circuit has held that the question of whether an administrative claim was timely filed with the EEOC is *not* jurisdictional. *Edelman v. Lynchburg College*, 300 F.3d 400, 404 (4th Cir. 2002).

B.  **Failure to Promote**

In each Count of the Amended Complaint, Plummer alleges that she was denied promotion opportunities on account of her disability (Count I), race (Count III), age (Count IV), and in retaliation for prior protected activity (Count II). HHS argues that Plummer's non-promotion claims must be dismissed for failure to exhaust administrative remedies because Plummer's stated claims in her 2014 EEO Complaint were limited the FDA's alleged failure to provide reasonable accommodations for Plummer's rhinitis and adverse reactions to chemicals and irritants.

The "EEOC charge defines the scope of the plaintiff's right to institute a civil suit." *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). A court in a civil action may consider "only those discrimination claims stated in the initial [EEOC] charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint." *Jones*, 551 F.3d at 300 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir.1996)). Because the principal purpose of this exhaustion requirement is to place the defendant on notice of the alleged violations, if a defendant has adequate notice of a claim, the plaintiff should not be held to "overly technical" requirements that turn the exhaustion requirement into "a tripwire for hapless plaintiffs." *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 593-94 (4th Cir. 2012).

Notably, however, "a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." *Jones*, 551 F.3d at 300 (finding no exhaustion of age, sex, or race discrimination claims when only the retaliation box was checked on the EEOC Charge); *Sydnor*, 681 F.3d at 593-94 ("We have therefore not found exhaustion where . . .

a charge alleges only retaliation but the complaint alleges racial discrimination as well."); *Bryant*, 288 F.3d at 132-33 (finding no exhaustion of retaliation, color, and sex discrimination claims where the EEOC charge and investigation related only to race discrimination). In the context of a discrimination claim asserted by a federal employee, the EEO complaint filed with the employing agency constitutes the EEOC charge for purposes of the exhaustion requirement. *See* 29 C.F.R. § 1614.106(a) ("A complaint must be filed with the agency that allegedly discriminated against the complainant."); 29 C.F.R. § 1614.407 ("A complainant who has filed an individual complaint ... is authorized under title VII, the ADEA and the Rehabilitation Act to file a civil action in an appropriate United States District Court"); *Bonds v. Leavitt*, 629 F.3d 369, 379 (4th Cir. 2011); *see also* Reynolds v. *Tangherlini*, 737 F.3d 1093, 1101 n.4 (7th Cir. 2013) (stating that "filing a complaint with the EEO office of the agency that allegedly engaged in the discriminatory conduct is equivalent to filing a complaint with the EEOC"); *Figueroa v. Geithner,* 711 F. Supp. 2d 562, 570 (D. Md. 2010) (holding that when a federal employee files an administrative complaint with the employing agency, "the scope of the subsequent civil suit is constrained by the allegations in the administrative complaint").

Here, Plummer's EEO Complaint specifically includes a check in the box for "Reasonable Accommodation" as the basis for alleged discrimination, but does not include a check in the box for "Promotion/Selection." EEO Complaint at 1. Although the check boxes are not necessarily dispositive on this issue, some allegation of non-promotion should appear in the narrative description in the EEO Complaint. *Chacko v. Patuxent Institution*, 429 F.3d 505, 509 (4th Cir. 2005) ("[T]he factual allegations made in formal litigation must correspond to those set forth in the administrative charge."). There is none. The 2014 EEO Complaint includes doctor's notes regarding Plummer's diagnosis and treatment, a letter from her supervisor concerning

reasonable accommodation efforts, and even an overview of "Sick Building Syndrome" from the EPA. EEO Complaint at 4-7, 11-16. The attached letter from Plummer's counsel failed to describe anything related to non-promotion and instead focused on Plummer's medical symptoms. Thus, in context, Plummer's assertion in the letter attached to the EEO Complaint that she had been subjected to disparate treatment because of her disability, race, and age could refer only to a claim that other employees were treated more favorably than Plummer in terms of receiving telework and other workplace accommodations.

The Acceptance Letter acknowledging receipt of the EEO Complaint similarly made no mention of any claim relating to a failure to promote and instead interpreted Plummer's claims as relating only to workplace accommodations. Notably, the Acceptance Letter informed Plummer that if she believed that OEEO had misidentified the claims, she had to notify OEEO within seven days. She did not challenge OEEO's characterization of the claims. The letter also informed Plummer that "you may amend your formal complaint with issues that are 'like or related' to those raised in the complaint" and that the FDA would acknowledge in writing any such amendments. Plummer filed no amendments adding claims relating to non-promotion. Thus, Plummer failed to assert a non-promotion claim in her EEO Complaint.

The only time Plummer referenced the issue of non-promotion was in an affidavit submitted during the investigation in response to questions from the investigator. However, a complainant's assertion of new claims in documents other than the formal EEOC charge or EEO complaint, even if directed to the EEOC, does not suffice to exhaust the claim. *See Balas v. Huntington Ingalls Indus. Inc.*, 711 F.3d 401, 408 (4th Cir. 2013) (holding that the plaintiff had failed to exhaust administrative remedies relating to new claims not stated in the EEOC charge even though she had asserted those claims in her intake questionnaire and two different letters

sent to the EEOC); *see also Moraga v. Ashcroft*, 110 F. App'x 55, 60-61 (10th Cir. 2004) (holding that a statement to an EEOC investigator that the plaintiff was also asserting a gender discrimination claim did not 'procedurally amend' an administrative complaint to add that claim). "[P]ersons alleging discrimination have a different form of recourse if they determine that their initial charge does not read as they intended: they may . . . file an amended charge with the EEOC." *Balas*, 711 F.3d at 408. As noted, Plummer was informed in the Acceptance Letter of her right to amend her complaint, but she failed to do so.

Because Plummer's non-promotion claims were not stated in the EEO Complaint and were not added by her statements to the investigator, they may only be deemed exhausted if they were "reasonably related to the original complaint" or "developed by reasonable investigation of the original complaint." *Jones*, 551 F.3d at 300. In cases in which these conditions are deemed to have been met, however, the new claim has been more closely related to the claim specifically referenced in the EEOC charge or administrative complaint. For example, in *Sydnor*, the plaintiff's civil suit sought a reasonable accommodation through the use of a wheelchair at her job, a claim that was not specifically included in her EEOC charge, which sought a reasonable accommodation for her limited ability to walk. 681 F.3d at 596-97. But both the administrative and judicial complaints were based on the same factual description, and the plaintiff had made repeated references to her wheelchair in the EEOC charge. *Id.* at 595-96. The court therefore held that based on the similarities between the claims and the references to a wheelchair in the EEOC charge, her claim for a reasonable accommodation to use a wheelchair could be "expected to follow from a reasonable investigation." *Id.* at 596. Similarly, in *Chisholm v. United States Postal Service*, 665 F.3d 482 (4th Cir. 1981), although the plaintiff's administrative complaint alleged discrimination in promotions and temporary detail assignments to higher level positions,

the judicial complaint alleged discrimination in discipline and testing. *Id.* at 491. The court held that the claims relating to discipline and testing "reasonably can be expected to follow the charge of discrimination" because the allegation in the administrative complaint that "USPS discriminated in promotions sufficed to put USPS on notice that the entire promotional system was being challenged, including aspects of the system such as discipline and testing which were not specifically enumerated in the complaint." *Id.*

Here, Plummer's non-promotion claims allege a distinctly different form of discrimination, so much so that the EEO Complaint form identifies "Promotion/Selection" as a different category from "Reasonable Accommodation." The Fourth Circuit has noted that failure to promote is a separate form of discrimination ordinarily distinct from others. *See Chacko*, 429 F.3d at 509 ("A claim will also typically be barred if the administrative charge alleges one type of discrimination – such as failure to promote – and the claim encompasses another type – such as discrimination in pay and benefits."). Notably, the EEO investigation, particularly the questions posed to the parties, focused on reasonable accommodations, not non-promotion. The Court will therefore dismiss the portions of Counts I-IV in which Plummer asserts a claim of discrimination based on a failure to promote. *See id.*

In the alternative, Plummer's non-promotion claims also fail because the Amended Complaint does not allege a plausible claim for relief. *See* Fed. R. Civ. P. 12(b)(6). In order for Plummer to establish a *prima facie* case of discrimination based on a failure to promote, she must show that: (1) she is a member of a protected class; (2) she applied for the position in question; (3) she was qualified for the position; and (4) she was rejected for the position "under circumstances giving rise to an inference of unlawful discrimination." *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

(1973)). Although it is not strictly necessary for a plaintiff to establish all elements of a *prima facie* case in the complaint, a plaintiff must allege sufficient facts to support a plausible inference of discrimination and thereby raise a right to relief above the speculative level. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

Here, Plummer's allegations relating to discriminatory failure to promote are inadequate. Although Plummer has alleged that she is a member of a protected class, and that other employees outside protected classes have been promoted, she has not alleged that she applied for, or would have applied for, any particular promotion that was denied on the basis of her race, age, or disability. She has not alleged that she was specifically qualified for any such higher level position for which she applied, nor has she alleged specific circumstances showing that she was rejected for a promotion because of her race, age, or disability. Therefore, even if her non-promotion claims were not administratively exhausted, they would be dismissed under Rule 12(b)(6) because her allegations are insufficient to state a plausible claim of discriminatory failure to promote.

### C. Retaliation

HHS further argues that Plummer's retaliation claim, Count II, must be dismissed for failure to exhaust administrative remedies. Unlike a discrimination claim, a retaliation claim can be alleged for the first time in federal court if it relates to the filing of the EEOC charge or EEO complaint itself. *Jones*, 551 F.3d at 302 (stating that "a plaintiff that has already been retaliated against one time for filing an EEOC charge will naturally be reluctant to file a separate charge possibly bringing about further retaliation"); *see also Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992) (holding that an Army employee could bring a retaliation claim for the first time in

federal court when the allegation was that the Army retaliated against her for filing an EEOC charge). However, a retaliation claim need not be exhausted only if it relates to alleged retaliation for the filing of the EEOC charge or EEO complaint underlying the federal complaint. *See Jones*, 551 F.3d at 304 (finding that a retaliation claim did not need to be exhausted where it could be construed as relating to retaliation for the filing of a second EEOC charge that gave rise to the federal complaint). To the extent that a retaliation claim relates to an earlier EEOC charge or protected activity, the Court may not consider it absent exhaustion. *See id.*; *see also Tonkin v. Shadow Mgmt., Inc.*, 605 F. App'x 194, 194 (4th Cir. 2015) (finding a failure to exhaust a retaliation claim where the plaintiff "had knowledge of the factual basis for her retaliation claim before she filed her charge with the EEOC").

Plummer's retaliation claims fall short of this standard. The Amended Complaint alleges retaliation in response to a 2009 EEO Complaint, yet Plummer failed to check the "retaliation" box in her 2014 EEO Complaint or otherwise allege retaliation elsewhere in that filing. Although Plummer now alleges, as retaliatory acts, the continuing denial of reasonable accommodations and promotion opportunities, these same actions were described in the 2014 EEO Complaint and thus necessarily did not constitute retaliation for the filing of that claim. There is nothing in the Amended Complaint stating that Plummer's retaliation claim arises out of the filing of the 2014 EEO Complaint such that it could be asserted for the first time in this action. Plummer's retaliation claim as articulated in Count II of the Amended Complaint is therefore dismissed for failure to exhaust administrative remedies.

### D.     Rehabilitation Act

Count I alleges that Plummer's supervisors at the FDA failed to provide reasonable accommodations of her disability, in violation of the Rehabilitation Act, by denying her requests

16

for a fragrance-free workspace, 2-3 days of telework, and the relocation of her office either to a location within the building with better air flow or to another building entirely. To establish a failure to accommodate claim under the Rehabilitation Act, a plaintiff must show that (1) the plaintiff has a disability; (2) the employer knew of the disability; (3) with reasonable accommodations, the plaintiff is otherwise qualified to perform the essential functions of the employment position in question; and (4) the employer refused to make such reasonable accommodations. *Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 413 (4th Cir. 2015). A "disability" is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 29 C.F.R. § 1630.2(g)(1)(i) (defining "disability" for purposes of the American with Disabilities Act); *see also* 29 U.S.C. § 794 (stating that the standards used to determine a violation of the Rehabilitation Act for employment discrimination "shall be the standards applied" under the Americans with Disabilities Act); *Reyazuddin*, 789 F.3d at 413 ("Employment discrimination claims brought under [the Rehabilitation Act] are evaluated using the same standards as those applied under Title I of the Americans with Disabilities Act of 1990"); *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264 n.9 (4th Cir. 1995) (stating that because the language of the Americans with Disabilities Act and the Rehabilitation Act is "substantially the same, we apply the same analysis to both"). "Reasonable accommodations" are "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held is desired or customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(ii) (defining reasonable accommodation under the Americans with Disabilities Act); *see also* 29 U.S.C. § 794; *Reyazuddin*, 789 F.3d at 413.

Plummer has sufficiently pleaded a failure to accommodate claim under the Rehabilitation Act. The Amended Complaint asserts that Plummer has a disability in that her chronic rhinitis has substantially limited her ability to work and breathe when exposed to various irritants that are found in her office environment. Plummer also recounts her various notifications to her supervisors of her condition, including providing notes from her doctor related to her rhinitis. Plummer further contends that her symptoms can be mitigated, and she can function at work, if management would implement a "fragrance-free work area in the office," move her to an office in the same building with better circulation or to another building, or allow her to telework on a more regular basis. Am. Compl. ¶ 26. Finally, Plummer alleges that HHS has denied these accommodations despite repeated requests to approve them and no significant cost to the government.

HHS contends that Plummer's proposed accommodations are not reasonable and asserts that it has granted Plummer "more accommodations than even her physician recommended and certainly every *reasonable* accommodation to allow her to perform the essential functions of her position." Mot. Dismiss at 20, ECF No. 15. However, viewing the complaint in the light most favorable to Plummer, the Court cannot conclude that Plummer's proposed accommodations are facially unreasonable or would not enable her to complete the essential elements of her position. HHS will have the opportunity, at a later stage of the litigation, to present evidence to support its claim that barring fragrances, additional telework, or moving Plummer's work station are not reasonable accommodations. Because the Amended Complaint has asserted facts supporting each element of a failure to accommodate claim, Plummer's suit may proceed on those grounds.

### E. Age and Race Discrimination

In Counts III and IV, Plummer alleges discrimination on the basis of age and race, in violation of the ADEA and Title VII. Under the ADEA, employers may not discriminate against individuals because of their age, 29 U.S.C. § 623(a)(1), while Title VII prohibits employment discrimination on the basis of race, 42 U.S.C. § 2000e-2(a). Both statutes require a plaintiff to establish a claim through one of two methods. The plaintiff may either demonstrate through direct or circumstantial evidence that race or age "motivated the employer's adverse employment decision," *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004), or the plaintiff may proceed through the approach adopted in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), "under which the employee, after establishing a *prima facie* case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually pretext for discrimination," *Hill*, 354 F.3d at 285.

Plummer alleges no direct evidence that her adverse employment action was based on her age or race and does not rely on this method in opposing the Motion. She therefore must proceed through the *McDonnell Douglas* framework, under which she must establish a *prima facie* case of disparate treatment by showing: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) disparate treatment as compared to similarly situated employees. *See Coleman*, 626 F.3d at 190. An adverse employment action "is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007). A plaintiff need not strictly establish each of these elements in the complaint, but the complaint must provide sufficient factual allegations to support a plausible inference of discrimination. *See Swierkiewicz*, 534 U.S. at 510–15.

HHS's only argument for dismissal of claims of disparate treatment based on age or race in the terms and conditions of employment is that Plummer's requested accommodations were not reasonable. As discussed above, however, the Court cannot at this stage of the case conclude that Plummer's requests were facially unreasonable, and the Amended Complaint alleges that similarly situated employees "have been treated more favorably than Plaintiff regarding their terms and conditions of employment, including flexibility in telework requirements." Am. Compl. ¶ 39. Plummer then proceeds to identify specific individuals outside of her protected classes of race and age that have allegedly received the same terms and conditions of employment denied to her. Accordingly, HHS has offered no persuasive basis for the Court to dismiss Plummer's claim of race and age discrimination in terms and conditions of employment.

## CONCLUSION

For the foregoing reasons, Plummer's Rule 56(d) Motion is GRANTED, and HHS's Motion to Dismiss, or, in the Alternative, for Summary Judgment, construed as a Motion to Dismiss, is GRANTED IN PART and DENIED IN PART. HHS's Motion is GRANTED as to the non-promotion claims in Counts I, III, and IV and the retaliation claim in Count II. The Motion is DENIED with respect to Plummer's remaining claims.

Date: October 3, 2017

THEODORE D. CHUANG
United States District Judge